## Guaranty Corporation v. City of Philadelphia et al.

*Robert T. McCracken,* for plaintiff.

*J. H. Prothero, E. Lowengrund, D. J. Smyth, J. F. Shrader,* and *WillB Hadley,* for defendants.

LAMBERTON, J., April 5, 1935.—The Guaranty Corporation, plaintiff, is seeking, by a bill in equity, to secure specific performance of a written agreement between plaintiff, the City of Philadelphia, the Baltimore & Ohio Railroad Company, and the Schuylkill River East Side Railroad Company, dated December 21, 1931. The case came to final hearing before president Judge Smith of this court, who, on July 3, 1934, entered a decree nisi, directing that the bill be dismissed. The matter is now before us on exceptions filed by plaintiff. The facts have been so fully covered in the adjudication of Judge Smith that no useful purpose would be served by repeating them here.

The agreement in question was signed on behalf of the City of Philadelphia by Harry A. Mackey, then mayor. The city is not bound unless Mayor Mackey had authority to so sign. The only possible basis for such authority rests·on two ordinances of city council, the one approved by the mayor on December 30, 1927, and the other approved on July 16, 1930. There may be some doubt as to whether these ordinances authorized the mayor to execute any agreement with plaintiff, but it seems to us abundantly clear that they did not authorize him to execute an agreement on the terms contained in the agreement of December 21, 1931. If this is true, the agreement is not binding on the city and cannot be enforced in equity.

A vital part of the agreement in question is the undertaking on the part of the city to forthwith condemn what is known as "Parcel B." It provides that after such condemnation the lower level shall be used exclusively by the railroads and the upper level by the city. It makes no difference whether we consider the railroads as using the surface and the city as using an elevated structure, or whether we consider the city as using the surface and the railroads as

using a subway. The use by the railroads was a vital element in the contract. In the preamble, it is stated that the railroads are unwilling to enter into the agreement unless Parcel B is condemned, and they are given the rights therein above set forth. In article 9, it is provided that settlement for Parcel A shall not be made until the city shall have condemned Parcel B.

Railroad companies have the right of eminent domain for railroad purposes. The City of Philadelphia has the right of eminent domain for city purposes. The railroads cannot condemn private property for city use, nor can the city condemn for railroad use. Neither the city nor the railroads can condemn for the joint use of the city and the railroads. The city therefore agreed to do what it has no right to do, and equity will not enforce such an agreement.

The contract in question was not certified by the city controller. Article XII, section 4, of the Act of June 25, 1919, P. L. 581, known as the City Charter Act, provides: "Every contract involving an appropriation shall designate the item on which it is founded, and shall be numbered by the city controller in the order of its date, and charged as numbered against such item, and so certified by him, before it shall take effect as a contract". The case of Edwin E. Hollenback, Inc., v. Hadley et al., 312 Pa. 176, holds that until such certification, there is no contract. There being no certification in this case, there is no contract, and there being no contract, there can be no specific enforcement.

Counsel for plaintiff argues that the situation was such that the controller should have certified the contract, and would have done so if it had not been withheld from his possession. The reason why the controller did not certify is of no importance. The fact that he had not certified, regardless of the reason, is conclusive of the fact that there is no contract.

Counsel for the plaintiff has joined the city controller as a party defendant, and one of the prayers in the bill is that the city controller be commanded to certify the contract. Passing by the obvious objection that such remedy should be by mandamus, we are again faced by the decision of the Supreme Court in the case of Edwin E. Hollenback, Inc., v. Hadley et al., supra. The available monies in this case have been transferred to other uses. The controller cannot be required to certify a contract when the funds are no longer available, and as a matter of fact, he would be violating his duty if he did so. The fact that the transfer was completed after the bill was filed is immaterial: Edwin E. Hollenback, Inc., v. Hadley et al., supra. Counsel for plaintiff has sought to distinguish the Hollenback case on the ground that Justice Schaffer, in an early part of his opinion, said: "The ordinance authorized, but did not direct, the director to enter into the contract." Counsel argues that in this case the mayor was directed to enter into the contract. This is not the fact, but even if it were, the distinction would be of no importance. Once the director or the mayor signs a contract, it no longer matters whether the ordinance of council directs or merely authorizes him so to do.

Specific performance cannot be decreed against the city, unless it is also decreed against the railroads. But the railroads have a stone wall defense against a request for specific performance by anybody. Throughout the agreement, it is made crystal clear that, so far as the railroads are concerned, Parcel A and Parcel B must both be made available to their use, and in order to make them available, certain acts were to be done by plaintiff and certain acts by the city. The agreement provided that the railroads need put up no money unless and until the use of Parcel B had been made available to them by condemnation proceedings, and the city covenanted that said use would be made available to

the railroads within 10 days from the date of the agreement. The city covenanted to exercise due diligence in the prosecution of the condemnation proceedings. In spite of this covenant, the city deliberately withdrew its condemnation proceedings and has ever since refused to proceed with them. The railroads cannot now be required to perform an agreement designed to put them in possession of railroad rights within 10 days, when by the default of one of the parties those rights have been withheld from them for a period now exceeding 3 years.

The matter is so amply covered by the adjudication of Judge Smith that nothing further need be said. We have examined all of the exceptions and have found them to be without merit.

And now, to wit, April 5, 1935, the exceptions are dismissed, and the decree nisi heretofore entered is made final. An exception is noted on behalf of plaintiff.